IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PIERSON REYNOLDS, JR., | ) | Case No. 1:20-CV-02159-JGC |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| MICHAEL PHILLIPS, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Pierson Reynolds, Jr. ("Mr. Reynolds"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Reynolds is serving a 15-year term of imprisonment after pleading guilty to: (1) one first-degree count of aggravated burglary; (2) one second-degree count of robbery; (3) one first-degree count of aggravated robbery; (4) one second-degree count of felonious assault; and (5) two second-degree counts of burglary.

Mr. Reynolds, through counsel, asserts one ground for relief, arguing that the State violated his due process rights because prosecutors abandoned their 13-year sentence recommendation after Mr. Reynolds' initial guilty plea was withdrawn when he was temporarily declared incompetent to stand trial. *Id.* Respondent, Warden Michael Phillips ("Warden"), filed an answer/return of writ on January 7, 2021. (ECF No. 5).  Mr. Reynolds filed a traverse on February 5, 2021. (ECF No. 6).

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a report and recommendation on Mr. Reynolds' petition and other case-dispositive

motions. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Reynolds' claim be DENIED. I further recommend that this Court not grant Mr. Reynolds a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

{¶3} Reynolds pleaded guilty to six charges on May 22, 2017, after the trial court advised him of his constitutional rights. At that time, the state recommended an agreed prison sentence of 13 years to the trial court, and Reynolds agreed to pay restitution totaling $ 520 to the three victims. The trial court informed Reynolds that, although there was a recommendation to serve 13 years in prison, the trial court was not bound by that agreement. Reynolds acknowledged that he understood. Defense counsel suggested that Reynolds was having some psychological issues and requested that a psychiatric evaluation be completed. The court referred Reynolds to the psychiatric clinic for a disposition evaluation pursuant to R.C. 2947.06(B).

{¶4} On July 7, 2017, a report was prepared and a hearing was held. On that day, the mitigatory psychiatric evaluation determined that Reynolds was found to have a medical disorder questioning his competence. A subsequent evaluation determined that Reynolds was incompetent to stand trial and recommended hospitalization. The trial court ordered Reynolds to inpatient restoration to competency at the North Coast Behavioral Healthcare. While Reynolds was hospitalized, his case was transferred to the mental health docket presided over by a different trial judge.

{¶5} After Reynolds was discharged, he appeared before the mental health court. Reynolds's counsel requested, by oral motion, to vacate his original plea. The mental health court granted the motion. At the hearing, the state confirmed:

We have no objection to withdraw the plea. However, I will note for the record that at the time of the original plea of guilty, there was also an agreement between the parties that the defendant would serve a 13-year sentence. And my

2

understanding is that negotiation, that offer, is now off the table, if the court is to accept the withdraw of plea today. I just wanted to make the record clear.

(Tr. 34.)

{¶6} Reynolds's counsel responded that "[w]e don't have a problem with that as a practical matter." (Tr. 35.) Reynolds later pleaded guilty to the same amended indictment. The trial court sentenced Reynolds to 15 years imprisonment. As a result of the sentence, Reynolds filed this appeal asking for the original agreed sentence of 13 years imprisonment to be imposed.

(ECF No. 5-1, Exhibit 14); *State v. Reynolds*, No. 106979, 2019 WL 856767, 2019-Ohio-630 (8th Dist. Feb. 21, 2019).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Plea</u>

On November 1, 2016, Mr. Reynolds was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) one first-degree felony count of kidnapping in violation of R.C. § 2905.01(A)(2); (2) two first-degree felony counts of aggravated burglary in violation of R.C. § 2911.11(A)(1); (3) one first-degree felony count of aggravated robbery in violation of R.C. § 2911.01(A)(3); (4) two second-degree felony counts of robbery in violation of R.C. § 2911.02(A)(2); (5) one second-degree felony count of felonious assault in violation of R.C. § 2903.11(A)(1); (6) two second-degree felony counts of burglary in violation of R.C. § 2911.12(A)(1); (7) two third-degree felony counts of robbery in violation of R.C. § 2911.02(A)(3); (8) three fifth-degree felony counts of theft in violation of R.C. § 2913.02(A)(1); (9) and one first-degree misdemeanor count of attempted theft in violation of R.C. §§ 2923.02 and 2913.02(A)(1). (ECF No. 5-1, Exhibit 1).

On May 22, 2017, Mr. Reynolds withdrew his plea of not guilty and pled guilty to Counts One, Four, Eight, Ten, Twelve, and Fifteen of the indictment. (ECF No. 5-1, Exhibit 2). The court entered a nolle prosequi on the remaining counts. *Id*. In connection with the

plea, the State recommended that Mr. Reynolds serve a sentence of 13 years. *Id*. During the plea hearing, Mr. Reynolds' counsel requested a psychiatric evaluation for mitigation purposes, which the trial court granted. (ECF No. 5-1, Exhibit 21, 18:15-21).

On June 29, 2017, the parties appeared before the trial court again following completion of the presentencing report and the psychiatric evaluation of Mr. Reynolds. Mr. Reynolds' counsel informed the trial court that, based on the psychiatric evaluation, he was requesting an evaluation of Mr. Reynolds' competency to enter into a plea agreement and to proceed with sentencing. (ECF No. 5-1, Exhibit 21, 22:23-23:3). The State did not object, and the court continued Mr. Reynolds' sentencing so that Mr. Reynolds could undergo a 20-day observation period to determine his competency. *Id.* at 23:4-19.

On July 17, 2017, the trial court held another hearing, at which it stated that Mr. Reynolds' competency report recommended that he be sent to North Coast Behavioral Healthcare for inpatient restoration of competency. (ECF No. 5-1, Exhibit 21, 27:11-28:2). After the hearing, the trial court entered an order finding that: (1) Mr. Reynolds was incompetent to stand trial; (2) Mr. Reynolds could be restored to competency within the statutory time frame if provided with a course of treatment; and (3) the least restrictive treatment setting consistent with Mr. Reynolds' needs and the safety of the community was in-patient treatment at North Coast Behavioral Health. (ECF No. 5-1, Exhibit 3). The trial court therefore ordered Mr. Reynolds to undergo for in-patient treatment and restoration of competency under the supervision of the court evaluation unit. *Id*.

On July 25, 2017, Mr. Reynolds, through counsel, filed a motion to transfer the case to the mental health court docket. (ECF No. 5-1, Exhibit 4). On August 11, 2017, the trial court referred Mr. Reynolds to the court psychiatric clinic for evaluation. (ECF No. 5-1,

Exhibit 5). On August 17, 2017, the case was transferred to the mental health docket and assigned to a new judge. (ECF No. 5-1, Exhibit 6).

On November 8, 2017, the parties stipulated to a competency evaluation that had been conducted on October 10, 2017. (ECF No. 5-1, Exhibit 7). Also on November 8, 2017, the trial court granted Mr. Reynolds' oral motion to withdraw his guilty plea. (ECF No. 5-1, Exhibit 8). The State did not object to Mr. Reynolds withdrawing his guilty plea, but informed the mental health court that the State's offer of a 13-year sentence was "now off the table, if the court is to accept the withdrawal of plea today." (ECF No. 5-1, Exhibit 21, 34:10-21). In response, the mental health court stated:

> I think that's bad faith on the part of the State, honestly. Because in essence, unknowingly you're negotiating with somebody who wasn't competent to even make an agreement to that. To take it off the table, I think operates on bad faith on the part of the State. I didn't know that was the case. Was that brought to my attention?

*Id*. at 34:22-35:4.

The trial court also stated:

> I hear that and I think to myself, they are doing that as a punishment because he is going to withdraw his plea. And his plea wasn't a valid plea to begin with because he wasn't competent at the time that he took the plea. So you know, it's unduly mean and I don't even think appropriate. Whatever. Motion is granted.

*Id*. at 35:17-24.

On January 17, 2018, Mr. Reynolds withdrew his plea of not guilty. (ECF No. 5-1, Exhibit 9). The parties agree that Mr. Reynolds had been restored to competency prior to that date. Mr. Reynolds again pled guilty to Counts One, Four, Eight, Ten, Twelve, and Fifteen. The State again agreed to enter a nolle prosequi the other counts in the indictment. However, the State apparently recommended in its sentencing memorandum that Mr. Reynolds be sentenced to maximum and consecutive sentences, rather than the 13-year sentence the State

had recommended in connection with Mr. Reynolds' initial plea. (ECF No. 5-1, Exhibit 12).[1]

On March 1, 2018, the trial court sentenced Mr. Reynolds to terms of five years on each of Counts One, Four, Eight, Ten, Twelve, and Fifteen. (ECF No. 5-1, Exhibit 10). The court ordered that Counts One, Four, and Five would run consecutively to each other, while Counts Ten, Twelve, and Fifteen would run concurrently to each other and to Counts One, Four, and Eight, for a total aggregate sentence of fifteen years. *Id.*

### B. Direct Appeal

On March 26, 2018, Mr. Reynolds, through counsel, filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 5-1, Exhibit 11). On July 24, 2018, Mr. Reynolds, through counsel, filed his appellate brief, raising a single assignment of error:

> 1. Mr. Reynolds' rights to due process and a fair sentence were violated where the prosecution abandoned its sentence recommendation for no justifiable reason and encouraged the court to impose the maximum and where the trial court, again, for no justifiable reason, imposed a sentence beyond that which had been originally agreed upon.

(ECF No. 5-1, Exhibit 12).

On February 21, 2019, the Eighth Appellate District affirmed Mr. Reynolds' sentence. (ECF No. 5-1, Exhibit 14). The Eighth Appellate District rejected the State's argument that Mr. Reynolds had breached the initial plea agreement. Specifically, the Eighth Appellate District held that Mr. Reynolds was deemed incompetent to stand trial at the time he entered his initial guilty plea, which meant that Mr. Reynolds lacked the capacity to enter into the agreement and neither party was bound by it.

The Eighth Appellate District also held that the trial court was not bound by the

---

[1] The State's sentencing memorandum does not appear in the record. Mr. Reynolds asserted in his direct appeal that the State had recommended maximum and consecutive sentences in its sentencing memorandum. (ECF No. 5-1, Exhibit 12). The State did not dispute that assertion on appeal, and the Warden has not challenged it in this proceeding.

6

original plea agreement and was free to determine the appropriate sentence for the charges to which Mr. Reynolds had pled guilty. The Eighth Appellate District noted that Mr. Reynolds' original negotiated plea agreement had not been reintroduced to the mental health court. The Eighth Appellate District thus held that the mental health court "did not err when it imposed a sentence greater than the original plea agreement."

### C. Ohio Supreme Court

On April 8, 2019, Mr. Reynolds, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 5-1, Exhibit 15). In his memorandum in support of jurisdiction, Mr. Reynolds raised a single proposition of law:

1. The Prosecutor withdrawing of an agreed recommendation of sentence based on nothing more than a defendant re-entering the exact same plea based on competency considerations at the time of his initial plea is vindictive and violates defendant's due process.

(ECF No. 5-1, Exhibit 16). On June 26, 2019, the Ohio Supreme Court declined to accept jurisdiction over Mr. Reynolds' appeal. (ECF No. 5-1, Exhibit 17).[2]

### D. Federal Habeas Action

On September 23, 2020, Mr. Reynolds, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Reynolds' habeas petition raises a single ground for relief:

1. A prosecutor's plea agreement withdrawal based on no justifiable reason is vindictive and violates due process.

*Id*. at PageID #6.

The Warden filed an answer/return of writ on January 7, 2021. (ECF No. 5). Mr.

---

[2] On May 22, 2019, Mr. Reynolds, through counsel, filed a motion to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B), arguing that his counsel was ineffective in violation of his Sixth and Fourteenth Amendment rights by withdrawing Mr. Reynolds' initial plea agreement and failing to argue for specific performance of the plea agreement. (ECF No. 5-1, Exhibit 18). The Eighth Appellate District denied Mr. Reynolds' Rule 26(B) application on October 30, 2019. (ECF No. 5-1, Exhibit 20). Mr. Reynolds did not appeal that decision to the Ohio Supreme Court and does not raise an ineffective assistance of counsel claim in his habeas petition.

Reynolds filed a traverse on February 5, 2021. (ECF No. 6).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Ashland County Court of Common Pleas sentenced Mr. Reynolds, and the Court takes judicial notice that Ashland County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Reynolds's § 2254 petition. Moreover, as Mr. Reynolds's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the

8

state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the

procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

11

applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

### A.  <u>Ground One: Violation of Due Process</u>

Mr. Reynolds argues that his due process rights were violated when the State abandoned its initial 13-year sentence recommendation solely because Mr. Reynolds' initial plea agreement was withdrawn due to concerns over his competency and when the trial judge imposed a 15-year sentence rather than the 13-year sentence the prosecution initially recommended. The Warden argues that Mr. Reynolds' petition should be denied because: (1) by pleading guilty, Mr. Reynolds waived his right to challenge any constitutional issue predating his plea; and (2) Mr. Reynolds' due process claim fails on the merits. For the reasons set forth below, I conclude that the Warden's arguments are well-taken, and I recommend that Mr. Reynolds' petition be denied.[3]

### 1.  *Waiver*

The Warden first argues that Mr. Reynolds' guilty plea precludes him from arguing that the State violated his due process rights by withdrawing its recommendation for a 13-year sentence. In support, the Warden relies on *Tollett v. Henderson*, 411 U.S. 258 (1973), where the Supreme Court held that a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id*. at 267. Thus, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is

---

[3] The Warden does not argue that Mr. Reynolds procedurally defaulted or failed to exhaust his due process claim. After careful consideration, I also conclude that Mr. Reynolds properly exhausted his claim and did not procedurally default on it.

charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*

The *Tollett* rule is not absolute. In *Blackledge v. Perry*, 417 U.S. 21 (1974), the Supreme Court held that the *Tollett* rule did not apply to a petitioner's claim that the State had acted vindictively by charging him with a felony after he appealed a misdemeanor conviction. The Court stated that the petitioner's argument went to "the very power of the State to bring the defendant into court to answer the charge brought against him." *Id.* at 30. The Court held that *Tollett* was inapplicable because the defendant was "not complaining of antecedent constitutional violations or of a deprivation of constitutional rights that occurred prior to the entry of the guilty plea," but rather "[t]he very initiation of the proceedings against him." *Id.* at 30-31; *see also Class v. United States*, 138 S.Ct. 798, 805 (2018) (holding that a guilty plea does not bar a criminal defendant from challenging the constitutionality of the statute of conviction on appeal because the challenge "call[s] into question the Government's power to constitutionally prosecute him") (quotations omitted).

*Blackledge* involved the state's ability to bring a charge against a defendant in the first place. Mr. Reynolds is not challenging whether it was constitutional for the State to indict him. Rather, he argues only that the State violated his due process rights when prosecutors withdrew their original sentencing recommendation. It is far from clear that *Blackledge* extends to claims of prosecutorial vindictiveness that fall short of alleging that an entire proceeding or an entire count is constitutionally impermissible. As one court within this circuit has stated, the *Blackledge* rule "has not been extended 'beyond the specific claims alleged in those cases' to encompass anything more than that the 'applicable statute is unconstitutional or that the indictment has failed to state an offense.'" *Myers v. Warden,*

*Warren Corr. Inst.*, No. 1:10-cv-343, 2011 WL 7039933, at *14 (S.D. Ohio Aug. 9, 2011), *report and recommendation adopted*, 2012 WL 122568 (quoting *Williams v. Warden, Noble Corr. Inst*., No. 1:07cv653, 2009 WL 6058620, at *15 (S.D. Ohio June 4, 2009)).

Indeed, several courts have held that *Blackledge* applies only where the prosecutorial vindictiveness claim challenges whether the State can properly prosecute the defendant at all. *See Beard v. United States*, No. 5:13-CR-00022, 2016 WL 11214629, at *6 (W.D. Ky. Mar. 2, 2016), *report and recommendation adopted in part, rejected in part*, 2017 WL 3055513 (stating that "[t]he waiver rule applies to claims of prosecutorial vindictiveness with one important clarification," namely, that the prosecutor "may not bring a new, enhanced charge upon retrial where the defendant successfully exercised his right to appeal his conviction."); *Wright v. McNeil*, No. 08-60715-CIV, 2009 WL 700308, at *11 (S.D. Fla. Mar. 17, 2009) (petitioner's claim that he received greater sentence due to rejection of initial plea offer was "nonjurisdictional, and, as such, is waived by [his] otherwise knowing and voluntary guilty plea which is supported by a factual basis").

Mr. Reynolds does not cite any cases to the contrary and does not address the Warden's argument that he has waived his prosecutorial vindictiveness claim. I therefore recommend the Court hold that Mr. Reynolds has waived through his guilty plea his argument that the State violated his due process rights when the prosecutors withdrew their initial recommendation of a 13-year sentence.

I reach a different conclusion, however, with respect to Mr. Reynolds' argument that the trial judge acted vindictively in imposing a 15-year sentence upon him. *Tollett* held that a defendant's guilty plea waives any constitutional violations that predate that plea. The trial judge's imposition of a 15-year sentence postdated, rather than predated, Mr. Reynolds' guilty

15

plea. The Warden has not provided any authority for the proposition that, by pleading guilty, a defendant waives his right to argue that the sentence subsequently imposed was the result of judicial vindictiveness, and nothing in *Tollett* appears to compel such a result.

I therefore recommend that the Court hold Mr. Reynolds waived his challenge to the prosecutors' withdrawal of their initial sentencing recommendation, but that Mr. Reynolds has not waived his argument that the trial judge acted vindictively during sentencing. In an abundance of caution, however, I will analyze both arguments on the merits.

### 2.  Mr. Reynolds' Due Process Claim

"[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Thus, in *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Supreme Court stated that it "can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *Id*. at 723-24.

In *Pearce*, the defendant obtained reversal of his conviction through state post-conviction proceedings. *Id*. at 713. The state retried the defendant, who was convicted again and sentenced to a longer term than he had originally received. *Id*. The Court held that imposition of a longer sentence following retrial violated the defendant's due process rights under the Fourteenth Amendment. The Court stated that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id*. at 725. Moreover, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to

16

appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id*. Accordingly, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id*. at 726.

While *Pearce* involved alleged vindictiveness on the part of a judge, the Supreme Court held in *Blackledge* that the *Pearce* rule also applies to vindictiveness on the part of prosecutors. There, the petitioner was convicted of a misdemeanor under North Carolina state law. 417 U.S. at 22. The petitioner filed a notice of appeal, which, under North Carolina law, annulled the prior conviction and gave him an absolute right to a de novo trial in Superior Court. *Id*. After the petitioner filed his appeal but before the de novo trial was conducted, prosecutors charged the petitioner with a felony based on the same conduct. *Id*. at 23. The petitioner ultimately pled guilty and was sentenced to a term of five to seven years. *Id*.

The petitioner filed a habeas petition, arguing, among other things, that the prosecutors acted vindictively and violated his due process rights by charging him with a felony after he appealed his initial misdemeanor conviction. *Id*. at 23-24. The Supreme Court agreed. It concluded that "the opportunities for vindictiveness [by a prosecutor] are such as to impel the conclusion that due process of law requires a rule analogous to that of the Pearce case." *Id*. at 27. The Court also noted that "[a] prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo . . . since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free." *Id*.

"While the *Pearce* opinion appeared on its face to announce a rule of sweeping

dimension, [the Court's] subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" *Alabama v. Smith*, 490 U.S. 794, 798 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)). "Because the *Pearce* presumption 'may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct,' [the Court has] limited its application, like that of other judicially created means of effectuating the rights secured by the [Constitution], to circumstances where its 'objectives are thought most efficaciously served.'" *Smith*, 490 U.S. at 799 (internal citations omitted) (quoting *Goodwin*, 457 U.S. at 373, *McCullough*, 475 U.S. at 138). As a result, the Court "has been chary about extending the *Pearce* presumption of vindictiveness when the likelihood of vindictiveness is not as pronounced as in Pearce and Blackledge." *Wasman v. United States*, 468 U.S. 559, 566 (1984).

In *Smith*, for example, the Supreme Court held that the presumption of vindictiveness does not apply where a greater penalty is imposed after trial than was previously imposed under an earlier guilty plea. 475 U.S. at 801. The Court reasoned that a judge imposing a sentence after trial will have access to greater information impacting the sentence than the judge would have in the context of a plea. *Id*. Similarly, in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Court considered whether a defendant's due process rights are violated where the prosecutor threatens to pursue a more severe sentence if the defendant does not accept a guilty plea. *Id*. at 365. The Court stated that the State's "unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction" was "'very different from the give-and-take negotiation common in plea bargaining between the prosecution and the defense, which arguably possess relatively equal bargaining power.'"

18

*Id.* at 362 (quoting *Parker v. North Carolina*, 397 U.S. 790, 809 (1970)). The Court further held that "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id*. at 364. Accordingly, a prosecutor does not violate the Due Process Clause where the prosecutor does "no more than openly present[] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." *Id*. at 365.

If a case falls within the *Pearce* rule, the Supreme Court has recognized "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374. A presumption of vindictiveness arises where there is a "likelihood of vindictiveness" based on the prosecutor's "stake in deterring the exercise of a protected right and the unreasonableness of his actions." *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005) (quotations omitted). If the presumption applies, the government must rebut the presumption, meaning the government must identify "objective evidence in the record to justify the increased sentence or additional charges." *Id*.

If the presumption of vindictiveness does not apply, a defendant can still prevail if he demonstrates "actual vindictiveness." *Id*. "Actual vindictiveness is demonstrated by 'objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights.'" *Id*. (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)). A defendant bears the affirmative burden of proving actual vindictiveness. *Vanover v. Warden, Lebanon Corr. Inst*., 502 F. App'x 548, 552 (6th Cir. 2012).

Here, Mr. Reynolds argues that the prosecutors violated his due process rights under

19

*Pearce* and *Blackledge* because they abandoned their 13-year sentencing recommendation solely because Mr. Reynolds exercised his right to withdraw his plea when he was deemed incompetent to stand trial. In rejecting Mr. Reynolds' argument, the Eighth Appellate District said the following:

> Although the mental health court suggested that the state acted in bad faith, it was not bound by the original agreement. Generally, plea agreements are made between defendants and the state. *See State v. Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, ¶ 23. Unless the court involves itself in the plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty or no contest. *Id., citing State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28. *State v. Fyffe*, 2d Dist. Greene No. 2016-CA-14, 2018-Ohio-112, ¶ 22. Additionally, it is important to note that the negotiated plea agreement was not reintroduced to the mental health court. The mental health court was then able to conduct a de novo sentencing. We find that the mental health court did not err when it imposed a sentence greater than the original plea agreement.

(ECF No. 5-1, Exhibit 14).

After careful consideration, I conclude that the Eighth Appellate District's ruling was not contrary to clearly established federal law. Mr. Reynolds does not cite any Supreme Court authority holding that prosecutors act vindictively when they revise their recommended sentence after a defendant withdraws an initial guilty plea. *Cf. Haight v. Jordan*, 59 F.4th 817, 857 (6th Cir. 2023) (holding that petitioner failed to establish vindictiveness where prosecution abandoned recommended sentence in plea agreement after state supreme court vacated guilty plea). Because the Supreme Court has never decided whether a prosecutor acts vindictively in abandoning a sentencing recommendation after a defendant's original plea is withdrawn, Mr. Reynolds is not entitled to habeas relief. *See Otte*, 654 F.3d at 599 (holding that a decision is contrary to clearly established federal law only if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts).

As the Eighth Appellate District also correctly recognized, "sentencing, unlike

20

bringing new charges, is the province of the judge," not the prosecutor. *Koski v. Samaha*, 648 F.2d 790, 797 (1st Cir. 1981). "To overturn a conviction or vacate a sentence on the theory that it was tainted by 'vindictiveness' in the prosecutor's actual or threatened recommendation is to suggest that it was the prosecutor not the judge who was running the court." *Id*. Thus, even assuming that prosecutors acted in bad faith in withdrawing their original sentencing recommendation, that would not provide a basis for habeas relief.

Mr. Reynolds further argues that the trial judge acted vindictively by punishing him for suffering from mental health issues. It is far from clear whether Mr. Reynolds' claim of judicial vindictiveness is cognizable at all, as he is challenging the trial court's initial sentencing of him rather than a re-sentencing after an initial sentence was vacated. The Sixth Circuit has held that a vindictive sentencing claim "arises only when a trial judge gives a defendant a more severe sentence after he successfully attacks his conviction on appeal." *Lister v. Burton*, No. 18-2017, 2018 WL 6437437, at *4 (6th Cir. Nov. 21, 2018) (holding that no clearly established Supreme Court precedent established that a vindictive sentencing claim arose when a trial judge imposed consecutive sentences in the first instance); *see also Thompson v. Bracy*, No. 1:19-CV-58, 2022 WL 676288, at *28 (N.D. Ohio Jan. 14, 2022), *report and recommendation adopted*, 2022 WL 911260 (questioning whether petitioner could state a vindictiveness claim where petitioner challenged initial imposition of sentence).

Regardless, Mr. Reynolds has not provided any basis to conclude that a presumption of vindictiveness should apply here. The trial judge was not involved in the plea negotiations, and Mr. Reynolds did not prevail on appeal or otherwise successfully challenge the trial court's rulings. Mr. Reynolds also has not provided any evidence that the trial judge disapproved of the fact that Mr. Reynolds withdrew his initial guilty plea in light of

competency concerns. *See McCullough*, 475 U.S. at 139 (holding that presumption of judicial

vindictiveness did not apply where there was "no realistic motive for vindictive sentencing").

Mr. Reynolds also has not established that the trial judge was motivated by actual

vindictiveness. He notes that the trial judge stated during the sentencing hearing that his

mental health issues made his conduct more dangerous, rather than less, and argues that the

trial judge's comments violate the Supreme Court's holdings in *Atkins v. Virginia*, 536 U.S.

304 (2002) and *Hall v. Florida*, 134 S.Ct. 1986 (2014), that individuals with diminished

mental capacity are less morally culpable. The vindictiveness doctrine, however, is not

designed to police all allegedly impermissible considerations in sentencing. Instead, it is

designed to prevent the State from punishing a defendant for exercising his or her legal rights.

*See Pearce*, 395 U.S. at 725-26. Even assuming that the trial judge did conclude that Mr.

Reynolds was more dangerous because if his mental health issues—and even assuming that

such a conclusion was improper—I am not persuaded that the trial court's actions falls within

the scope of *Pearce*.

Finally, even if a presumption of vindictiveness did apply, "[n]othing in *Pearce* is to

be read as precluding a rebuttal of imitations of vindictiveness." *McCullough*, 475 U.S. at

141. Here, the trial judge provided an adequate explanation for the sentence that she imposed.

Among other things, the trial court based Mr. Reynolds' 15-year sentence on: (1) the age of

the victims and the fact that they suffered serious physical, psychological, or economic harm;

(2) the fact that Mr. Reynolds did not act under strong provocation; (3) Mr. Reynolds' mental

health issues, which the trial court found made Mr. Reynolds' conduct "more dangerous"; (4)

Mr. Reynolds' "long, violent juvenile record"; (5) Mr. Reynolds' history of alcohol or drug

abuse; and (6) a history of violence that apparently continued while he was at North Coast

Behavioral Health.[4] (ECF NO. 5-1, Exhibit 21, 71:23-77:6).

I conclude that the trial court provided sufficient reasons on the record to impose a sentence above the 13 years that the State originally recommended. *See McCullough*, 475 U.S. at 140 (holding that sentence did not violate defendant's due process rights where sentencing judge "provide[d] an on-the-record, wholly logical, nonvindictive reason for the sentence"); *Vanover*, 502 F. App'x at 551-52 (holding that presumption of vindictiveness did not apply where judge relied on defendant's criminal history and lack of remorse in imposing more severe sentence). I therefore recommend that the Court deny Mr. Reynolds' habeas petition in its entirety.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court

---

[4] The record does not reflect precisely what incidents of violence occurred while Mr. Reynolds was being treated at North Coast Behavioral Health Care. Mr. Reynolds has not disputed that any such issues occurred and has not argued that it was inappropriate for the trial judge to take those incidents into account.

could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].""). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. <u>Analysis</u>

Mr. Reynolds has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Reynolds's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  June 12, 2023            *s/Jennifer Dowdell Armstrong*
                                 Jennifer Dowdell Armstrong
                                 U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate

the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).